Bank vs. Forsyth.

No. 12,799.

UNION NATIONAL BANK OF NEW ORLEANS VS. H. D. FORSYTH
ET AL.

The contract of pledge was made to cover the fee of attorney for professional services rendered by pledgee's attorney in court, and for his services rendered out of court, in all matters appertaining to the securities pledged.

The debtor after it had failed to meet and pay its indebtedness at maturity of its obligation, was indebted for the fee of the creditor's attorney, on the amount realized and credited on the pledgee's claim from the sales of the pledged property.

The effect of plaintiff's default in its payment was suspended during the delays granted by defendant to plaintiff after default. No fee is due on collections made during that time. Sale being a condition precedent to the fee, no amount is due as a fee on the collections made on the securities (without sales).

The rule as above indicated applies to the commission claimed to pay the creditor's special agent.

The bank, by the fact, that it closed its doors and suspended payment, did not cause to mature all its unmatured obligations. It was not a case of judicially fixed insolvency. In consequence no fee and commission are due on the assumption that the debt had become matured by the debtor's insolvency.

The special agent of defendants under the contract was not the special agent of the plaintiff as well. He owed a duty to his principal, the defendants. If there was any obligation to report and give notice of sales to the plaintiff debtor, it was due by the pledgees and not by the agent. The pledgees' obligations are in some respects those of agents. But the pledgees, in view of the facts, did not lose the right to fee and commission, because no notice was given by them to the pledgors of sales intended, or of sales made. They are protected by the terms of the contract of pledge. The bank did not give them such evidence of preparation to resume business as required them to suspend sales of bonds.

The sale of the bonds on a depreciated market was permissible under the terms of a contract plaintiff chose to sign, and offers no ground for a set-off against defendants' claims.

Plaintiff having in part succeeded in sustaining its injunction is not bound for any fee of defendants' attorneys for services in dissolving the injunction.

A PPEAL from the Civil District Court for the Parish of Orleans.
Rightor, J.

T. J. Semmes, and Saunders & Miller for Plaintiff, Appellant. '

Henry Denis for Defendants, Appellees.

Argued and submitted May 7, 1898.
Opinion handed down May 30, 1898.
Rehearing refused June 29, 1898.

Bank vs. Forsyth.

The opinion of the court was delivered by

BREAUX, J.   Plaintiff brought this suit to sequester and recover possession of securities pledged by it to the defendant.

Plaintiff in the same suit obtained a writ of injunction to prohibit the defendant from disposing of its securities.

The credit needed by the plaintiff bank in England was obtained by depositing these securities with the Baring Brothers & Co., Limited, the defendants, by whom the desired loans were made to plaintiff.

The values thus deposited as securities consisted of local bonds and bills receivable.

A disagreement of some moment arose between plaintiff and defendant growing out of plaintiff's unwillingness to let defendant sell any of the remaining securities at the time in defendant's possession.

The plaintiff bank had suspended payment on the ninth day. of September, 1896, and the Comptroller of the Currency had appointed one of the bank examiners to take charge of its affairs.

With the view chiefly of saving these securities from a sale on an unduly low market, the bank, after a reorganization reopened its doors, and resumed business on the seventh day of December, 1896.

The act of pledge under which the defendant held these securities as pledgees, was similar to prior acts of pledge executed at different times preceding the last act of pledge which is now before us for interpretation.

In this last act of pledge it is stated that it provided a credit of sixty thousand pounds sterling to be drawn for by plaintiff from time to time, prior to the eleventh day of August, 1897.   The securities were deposited at the time with the representative of the defendant in New Orleans.

It was stipulated by the terms of the pledge that "in case of default in the payment of the amount due, or to become due," that the local representative of defendant would have authority, at his discretion, without any previous demand of payment, with or without notice to the bank, to sell the pledged property at public or private sale for its market value and apply the proceeds of the sale to the payment of the amount due, including commissions of two and one-half *per cent.* on the " amount realized by the sale or from this

pledge, to be paid to the said agents of the payees, and also attorney's fees in case of legal action or proceedings or professional services in or out of court, at the rate of five *per cent.* (5 per cent.) on the amount realized by said sale or by the pledge and all costs and charges attending said sale."

The amount was increased to one hundred thousand pounds, as follows:

In the first place it was increased by an amount of twenty thousand pounds, identified as the supplemental credit, renewable every four months; sixty thousand pounds and twenty thousand pounds were secured by the same act of pledge.

On the 17th of August the bank applied for an additional credit of forty thousand pounds. The defendant refused to grant another credit exceeding twenty thousand pounds. In answer the bank accepted the offered loan of fhe twenty thousand pounds and informed the defendant that it had deposited with its agent here one hundred and fifty thousand dollars of its bills receivable against the twenty thousand pounds allowed it.

The bank contended that the collateral held over under the terms of the previous pledge consisted entirely of State and city bonds and were held against a credit of twenty thousand pounds, and that in consequence these State and city bonds did not fall within the grasp of the pledge requiring the payment of "commission and a fee."

This loan is subject to the additional agreement appended to the act of pledge and dated a few days after this correspondence between plaintiff and defendant.

This agreement related to forty thousand pounds and covered all the loans not included in the body of the pledge. This *addendum* to the contract of pledge recites that the loan was made "on precisely the same terms and conditions as stipulated in the written agreement and is io be covered and secured by the same act of pledge contained in the agreement and securities to be furnished in proportion."

A few weeks after the renewal of the contract of pledge the bank closed its doors and suspended business. It was discovered that a large amount of its capital had been abstracted. Naturally enough the defendant creditors were made exceedingly uneasy about their claims.

There had, to that time, existed between plaintiff and defendant, the confidence and good will which usually exist after years between large institutions dealing one with the other.

Unexpectedly, the good relations were brought to a sudden stop by the disorder in plaintiff's business.

The agent of the defendant in New York, their agent here, and their lawyer, were given directions to put forth their energies to the end of protecting defendant's rights. They, in their respective capacities, rendered valuable services. Needful inquiry was made, interviews held, books were examined and the value of the securities held by defendant investigated. The attorney at law was, during the plaintiff's suspension, frequently called upon for advice. The question which arose involved large amounts and consequent great responsibility.

The agent here, under defendant's interpretation of the contract of pledge, sold bonds pledged to the amount of thirty-nine thousand two hundred and sixty-five dollars, prior to maturity of plaintiff's indebtedness, but after the suspension of the bank. The plaintiff contends: "No commission or fee is due on the amount of bonds thus sold." Further, the plaintiff contends that "no service was rendered nor suit instituted from September 12 to October 20, and that no attorney's fee is chargeable on amounts realized during that period, nor on amounts collected subsequently, during a time stated, granted by the defendant to the plaintiff." The former, the Barings, were informed that it was the plaintiff's intention to resume business in December following. The defendant acceded to a request for an extension to December 14, and did nothing, as far as the record discloses, with a view of foreclosing the pledge. It is with reference to this time that plaintiff chiefly objected to the payment of a lawyer's fee. The bank, it appears, voluntarily paid to the defendant the sum of one hundred and twenty-nine thousand nine hundred and eighteen dollars voluntarily. On this amount also the plaintiff contends that no fee should be charged.

The makers of various notes, deposited in pledge, came forward and paid notes in amount one hundred and sixty-two thousand dollars. Plaintiff resisted the payment of a fee on this amount also, and lastly, plaintiff denied all indebtedness for any fee whatever. The only services, it urged, shown were not services for which plaintiff was bound.

The aggregate amount of commissions and counsel fee to which the defendants laid claim was (seven and a half per cent.) on five hundred and thirty-three thousand dollars.

Defendants at one time proposed to plaintiff to reduce the fee of counsel and commission of the agent to five per cent. The proposal, the defendant asserts, was for the purpose of a compromise, which the plaintiff refused to accept.

The judgment of the District Court dissolved plaintiff's injunction, and condemned the defendants to pay one thousand dollars as a special fee of their counsel for the dissolution of the writ.

The judgment further condemned the Union Bank to pay the defendants the sum of six thousand eight hundred and forty-two dollars and sixty-six cents, together with counsel fee at the rate of five per cent., and commissions at two and a half per cent. on the sum of five hundred and five thousand dollars with legal interest from judicial demand, with privilege on the pledged securities, and rejected defendant's demand for a sum of seven hundred and forty-four dollars.

From this judgment the defendant appealed.

### ATTORNEY'S FEE.

We take up for decision the issues tendered by the reconventional demand of the defendant; the first grows out of the claim for attorney's fee.

The defence interposed by plaintiff, against all claims for fees, does not find support in any part of the contract of pledge. It was not stipulated that the attorney's fee was to be paid only in case of legal proceedings in a court of justice, but, on the contrary, it was expressly stipulated that the attorney's fee should be, in certain case, paid, although rendered *out of court*. We surely are without authority to read out of the contract the words " services rendered out of court," by the attorney. These words enter into the contract consented to and accepted by the plaintiff. They refer to professional services rendered out of court. From the text we must conclude that it was the intention of the parties to provide for compensation for professional services in looking after the lender's interest in these securities. No limit was placed upon the nature of the service to be rendered professionally, for the payment of which the plaintiff would be bound. It is not for the court now, because of the great change in circumstances as relates to plaintiff, to impose a limit evidently not thought of when the contract was signed.

It would be greatly erroneous to substitute any other meaning than

that which clearly appears from the words of the act. Having deter mined that services are due, the amount which should be allowed under the contract of pledge must be considered. A large sum was voluntarily paid by makers of notes that had been deposited in pledge by the bank. The contention of the plaintiff now is, that fees could not be charged on this amount. We did not discover in examining the act closely that it was the intention to bind the plain tiff to pay a fee of five per cent. on all amounts collected under the pledge; that with the collection of an amount due, though volun tarily paid, the fee was exigible. During eighteen years loans had been paid by the bank on pledges similar in form in every respect to the one now before us for interpretation. We are not informed that at any time a fee had been charged, but, on the con trary, we are led to infer with some certainty that no such fee had ever been exacted on collections, which had always been made with out the necessity of a sale of the securities. We construe the words " or from this pledge " as written in the contract of pledge were qualified by the previous conditions " in case of default " of the debtor and the sale of the securities pledged, the professional ser vices of the lawyer employed to advise in matter of the sale were then to be paid. We are in the presence of two interpreta tions; one extensive or comprehensive (*interpretatio extensiva*) in which a fee would have been due on all amounts paid voluntarily either by the debtor or by the makers of notes and bonds pledged, or the other interpretation, not extensive or comprehen sive; the true interpretation, in our judgment, limiting the fee to the services rendered in suits or in effecting sales in accordance with the rights of the parties. This, we infer, was heretofore defendant's interpretation of the act of pledge. To some extent, at least, this is made to appear by the basis of settlement they at one time pro posed to plaintiff.

There was an amount in addition voluntarily paid by the bank, on which defendant claims a fee. This, in our judgment, is subject to the same interpretation.

It never was, in our view, the intention to hold plaintiff for attor ney's fee and to open a regular account after maturity for that fee— the same, for instance, as an interest account to be collected as a matter of course with the capital. The mere maturity of the obliga tion did not give rise to a claim for the fee beyond the reach of the

effect of subsequent delays and indulgences granted by defendants to plaintiff.

There was, it is asserted by plaintiff, a short rest (indulgence) granted by defendant to it from the twenty-eighth day of October to the fourteenth day of December.

The record discloses that the defendant granted the indulgence alleged. There was, in our view, an abatement of the default during the time extended from October 20 to December 14, 1897. It follows that during that time no fee is due on amounts realized.

### SPECIAL AGENT'S COMMISSION.

We pass to a consideration of defendant's claim for commissions amounting to twelve thousand six hundred and twenty-five dollars, that is two and one-half per cent. on five hundred and five thousand dollars.

There was a condition precedent (default in payment of defendant's obligation) : To defendant's right to a commission of two and one-half per cent.

This condition had not arisen. Plaintiff's obligations were not due. They matured after the sale of some of the securities. That is, the defendant sold part of the pledged securities deposited to secure the draft of plaintiff that defendant had taken up before the maturity of the pledge, on the assumption that the bank's suspension of business gave to creditors the right to consider as matured all their unmatured claims.

The insolvency of the bank had not been declared by a judicial order or decree. Prior to a declaration of the sort payment of unmatured debts is not exigible.

The article applying reads: " Whenever there is a cession of property either voluntary or forced, all debts due by the insolvent shall be deemed to be due, although contracted to be paid at a term not yet arrived." C. C. 2054. In our judgment Art. 3057, cited by defendants, relating to sureties, does not apply. The defendants were the creditors of plaintiffs and not its sureties. Suspension of payment is not, of itself, evidence of insolvency causing obligations to mature.

Our decisions have given that interpretation to the article cited. Bank vs. Brewing. Association, 49 An. 935. The decisions of the French courts, under similar legislation, is virtually the same. Lau-

rent, Vol. 17, Sec. 194.   It follows that no commission and no fee is due on sales of pledged securities made prior to default in payment.

This brings us to a consideration of the claim for commission on the bonds pledged, sold between September 12 and October 12, by defendant's local agent, forfeited by the agent (it is contended by defendants) because of the alleged concealment of sales he had made of securities in pledge.

In our judgment, the local agent of defendant was not as well the agent of the bank.   He owed a duty to his principal, the defendant, with which he complied.

His name was brought into the contract of pledge exclusively as the agent of the defendant.     As agent of defendant he was authorized to sell the bonds.   He was bound, under the articles of agreement, to render an account to his principal, and not to the bank. The latter had it in its power to stipulate regarding this agency—*i. e.*, that he would be a joint agent.   The bank did nothing of the sort, but agreed to pay a commission to the former's agent.

It was different, it is true, with the pledgees.   It devolved upon them to use proper diligence to prevent or minimize the pledgor's loss.   If accounting or notice was due after the pledged securities had been sold, it was due by the pledgees.   Their obligations are in its nature somewhat similar to those of mandatories and agents. Richardson vs. Mann, 30 An. 1064.   We do not find, however, that they were at fault for not having given notice.

After having considered in our decision the principles laid down in a number of decisions relative to the fiduciary relations of the pledgor, we did not think that the defendants had violated their contract by not having given notice to the bank immediately after the sale, or within the time defendant contends it should have been given.    The collaterals pledged were sold at market rates.   The unfavorable market complained of was not a contingency against which plaintiff had provided in its contract.

The defendants, in view of the facts, can not be held bound for the difference between the price realized on the bonds and the price at which they would have been sold when the bank resumed.   They were sold when the bank was in default.   The contract gave the right to sell at market rate, though depressed.

Moreover the defendants, in view of the facts, can not be held bound for the difference between the price realized on the bonds and

the price at which they would have been sold when the bank resumed.    They were sold when the bank was in default.

It does not appear that there was certainty about the bank's resuming business, or that the bank notified its creditors with any degree of certainty that it would be in a position to pay, and, in consequence, no sale should be made on a depressed market.

Our inquiry as relates to the remainder of defendants' claim for commissions—*i. e.*, two and one-half on the securities sold after default, has resulted in our concluding that they should be allowed on the amounts to which we have determined the defendants have the right to fee of attorney.

It is a case of *eadem ratio, idem jus.*

Defaults and sales were conditions precedent to commissions or fee.

There are conditions that are not very clear in the contract.    We note, for instance, that abruptly it is stipulated that a commission shall be due on amounts realized "or from this pledge," without accompanying statement whether this was to be allowed without reference to default or sale.    The defendants are the obligees.    They seek to compel payment.    *In obscuris quod minimun est, sequimur, secundum promissorem interpretamur.*    "Still, if a word or sentence of a contract leaves a decided doubt, sound sense dictates that they are to be taken most strongly against the party using it, because it was his affair to word the instrument."    Lieber's Hermeneutics, Sec. 7.

There is a decided doubt as to whether all the amounts were collected on the pledged securities.    There are grounds for concluding that as to a large portion collected (not by sale of the pledged securities), but from the debtor, that the collection was on defendant's promise to pay and not especially on the pledged securities.    The contract did not cover a fee or a commission for collecting the former.    It only covered, as we appreciate the issues, a fee and commission in case of sale of securities after plaintiff's default in its payment.

We have noted that an amount was allowed by the judgment of the District Court for professional services rendered by defendants' attorney in matter of dissolving the injunction.

Plaintiff's injunction was not groundless.

Defendants claimed the right to sell the securities they hold to

satisfy an amount larger than the terms of the contract of pledge sustain.

In our judgment defendants are not entitled to the amount claimed for attorney's fee for dissolving the injunction.

It is ordered, adjudged and decreed that the judgment appealed from is amended; that the demand of plaintiff, the Union National Bank, be rejected with costs to the amount of plaintiff's indebtedness as fixed by this decree.

It is further ordered, adjudged and decreed that writs of sequestration and injunction in this case be dissolved to the amount of plaintiff's indebtedness herein established, and that the amount of one thousand dollars allowed by the judgment for fee of attorney for dissolving the injunction is not allowed; it is rejected, and that the judgment appealed from be further amended by forever enjoining the defendant from selling securities pledged to satisfy an amount larger than here allowed, and to that extent the injunction is made perpetual.

It is further ordered, adjudged and decreed that Baring Bros. & Co., Limited, have judgment on their reconventional demand, condemning the Union National Bank to pay them the sum of six thousand eight hundred and forty-two dollars and sixty-six cents; together with counsel fees at the rate of five per cent. on the sum of one hundred and sixty-six thousand one hundred and eighty-six dollars ($166,186) and commissions at the rate of two and one-half per cent. on the sum of one hundred and sixty-six thousand one hundred and eighty-six dollars ($166,186), with legal interest on the total of these sums from judicial demand, with privilege and preference on the pledged securities.

It is further ordered, adjudged and decreed that no rights of Baring Bros. & Co., Limited, to claim damages are reserved.

As herein amended, it is ordered, adjudged and decreed that the judgment appealed from is affirmed, but in those respects that the judgment of the lower court does not conform with these amendments it is annulled, avoided and reversed; costs of appeal to be paid by appellee. The cost of the lower court to be paid by the Union National Bank.

## ON APPLICATION FOR A REHEARING.

BREAUX, J. In the brief for a rehearing by the Union National

Bank, it was stated that by irresistible implication, our opinion in the case holds that the pledgee, in order to establish his right to the attorney's fee was bound to prove affirmatively the actual and precise services or advice for the rendition of which the attorney's fee is claimed.

·· Counsel for plaintiff further stated that the pledgees, as claimants, ·were bound to make out their case; they must prove affirmatively, positively and satisfactorily the existence of a state of facts needful to make out a case.

Granted; in view of the large amount involved, the terms and ·conditions of the contract of pledge, the many complicated questions that arose after the plaintiff bank had closed ·its doors, the great responsibility resting upon the counsellor in interpreting and ·explaining the rights of the parties concerned, we are decidedly of the opinion that the fee is not too large in amount.

Now, with reference to the agent named in the contract of pledge, the foregoing, in many respects, apply.

It was through his agency that the loan was made secure and satisfactory to the lender.

We infer that the loan would not have been made at all without the assistance of an agent in whom the lender had confidence.

The amount allowed to the attorney and the agent, in our judgment, does justice between the parties.

We might stop here, but the insistence on the part of plaintiff is that in view of the fact that we have heretofore decided that thirty-nine thousand two hundred and sixty-five dollars of plaintiff's values deposited with defendant's agent, in pledge, were prematurely sold, that in consequence neither attorney's fees nor commission on that amount were recoverable; that we should for the reason of sales prematurely made of other securities decide that no fee or commission is due on other amounts received.

The aggregate amount to which this refers is fifty-four thousand and ninety-seven dollars and fifty cents. This claim for deduction was not originally in argument. The pleadings are silent· in that respect. With reference to the fee allowed, which is disputed, there was an issue presented and clearly met. We do not think that in justice we should, presented as the case was, make further deductions. The claim of prematurity urged on rehearing is not sustained.

Application of plaintiff and defendant, appellee and appellant, for a rehearing is refused.